406 So.2d 555 (1981)
STATE of Louisiana
v.
Gerald T. KERSEY.
No. 81-KA-0760.
Supreme Court of Louisiana.
November 16, 1981.
*556 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Nancy F. Gilliland, Asst. Dist. Atty., for plaintiff-appellee.
Richard C. Goorley, Monroe, for defendant-appellant.
CALOGERO, Justice.[*]
Gerald T. Kersey was indicted by the Ouachita Parish grand jury for the crime of negligent homicide, a violation of La.R.S. 14:32. On October 3 and 4, 1980, he was tried before a six member jury and found guilty as charged. Thereafter, he was sentenced to five years at hard labor. He appeals from his conviction and sentence on the basis of five assignments of error, four of which are argued. We find none of them meritorious.
On April 5, 1980, at about 3:43 A.M., the Monroe Police Department checked the report of a black man lying in a lane of traffic on South 10th Street. Upon reaching the scene, the officers found a man lying semi-conscious in the street. It appeared to the officers that the man had been hit by a car. He was severely injured, and he was taken to the hospital. At approximately 6:00 A.M., a Louisiana State Trooper, B.B. Lewis, noticed a damaged automobile parked six blocks from the location where the injured man was found, at a residence on South 10th Street. At that *557 time, the trooper and two police officers awakened the occupants of the residence to inquire as to the ownership of the damaged automobile. A woman answered the door and responded that her son, Gerald T. Kersey, owned the car. He was summoned to the door, advised of his Miranda rights, and questioned. He was arrested for negligent injury. However, after the victim died three days later, he was charged anew, this time with negligent homicide.
The North Delta Crime Laboratory positively identified blood, hair, and clothing samples that were removed from defendant's car as having identical characteristics as the victim's. Positive comparisons were also made between paint and glass samples taken from the victim's clothes and the crime scene, and the paint and glass taken from defendant's car. Defendant admitted driving the car home that morning from a nightclub and that he had been drinking heavily. The block of South 10th Street where the victim was found was on the route defendant took from the nightclub to his home. There were no eyewitnesses to the accident and defendant denied having any knowledge of having been involved in an accident. After trial, defendant was found guilty of negligent homicide and sentenced to five years imprisonment at hard labor.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
By these assignments of error defendant argues that the trial court erred in denying his motion for a new trial based on the contention that the verdict was contrary to the law and evidence. More particularly, defendant contends that there was no evidence of criminal negligence, nor of defendant's driving the vehicle in question at the time of the accident.
La.R.S. 14:32 provides:
"Negligent homicide is the killing of a human being by criminal negligence.
"The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
"Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years."
To establish criminal negligence the state must prove that defendant's conduct evidenced "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.R.S. 14:12.
Defendant argues that there was only proof of ordinary negligence as opposed to criminal negligence. Defendant contends that the circumstantial evidence produced by the state was insufficient to support a finding of criminal negligence and/or a finding that he was driving the vehicle at the time of the accident.
This Court has recently addressed the question of the sufficiency of evidence necessary to support a conviction where the evidence is only circumstantial in State v. Austin, 399 So.2d 158 (La.1981) and held that under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) "... when we review a conviction based on circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded."
Concerning the issue of whether there was sufficient proof that defendant was driving the car at the time of the accident, the evidence established the following:
The victim was found lying semi-conscious in the street at 1004 South 10th Street, at approximately 3:43 A.M. He was bleeding profusely as his legs were almost severed. It appeared from the severity of the wounds and the scattering of his clothing articles that he had been hit by a motor vehicle. At the scene of the accident, the officers found pieces of windshield wiper blades that later proved to be the type used on a 1979 Ford Mustang automobile.
A damaged 1979 Mustang was located six blocks away at 1615 South 10th Street. Its *558 front windshield was heavily damaged, the hood had scuff marks on it, the right front bumper area was damaged, blood and hair were on the surface of the car and clothing patterns were on the chrome of the windshield. The blood and hair were scientifically identified, the blood as human and the hair as having Negroid characteristics. The clothing pattern matched the pattern of the victim's clothes. The paint smears on the victim's shoes and the glass taken from the victim's clothes were analyzed and found indistinguishable from the paint and glass of the Mustang. The foregoing scientific evidence was supported by the testimony of Mr. Ray Heard, criminalist and supervisor of the Northwest Louisiana Criminalistics Laboratory.
At about 6:30 A.M. on the morning the victim was found, three officers went to the residence where the damaged Mustang was located. The defendant's mother answered the door and upon being asked who the Mustang belonged to, responded that it was her son's, the defendant. She told the officers that her son was inside the house asleep. She was asked to go and get him, which she did. When defendant appeared he produced a valid driver's license and admitted that he owned the Mustang. At that point defendant was informed of his rights. Thereafter, upon questioning, the defendant admitted that he had driven the Mustang earlier that night. He stated that he had been at a nightclub where he had been drinking "quite heavily" and that he had left the nightclub alone and driven the Mustang home. He stated that he left the nightclub sometime after midnight and in driving home he took a route that passed the location where the victim was found. He further stated that he had not allowed anyone else to use his car that night and that no one else had keys to the car. His keys were in his room and the car was parked outside and locked at 6:30 A.M. when the officers approached his house.
In proving that defendant was criminally negligent, the state introduced the testimony of the officers that were at defendant's house the morning of the incident. They testified that defendant still looked groggy and smelled of alcohol. Defendant admitted that he drove his car home on the night in question after having been drinking "quite heavily". In their investigation of the scene of the accident, the officers noted that there were no skid marks or debris, indicating that the vehicle that hit the victim had not tried to either swerve or brake. Finally, the victim was left in the street, critically injured, after being struck by the Mustang.
The question presented for our determination is whether a rational trier of fact could conclude that the foregoing evidence excludes every other reasonable hypothesis than that the accused was the driver of the vehicle that hit the victim and that he was criminally negligent in doing so. We find that a rational trier of fact could do so.
The evidence establishes that the victim was struck by defendant's Mustang and that no one else but defendant had driven the Mustang on the night in question. The evidence also supports a finding of criminal negligence in that defendant was driving the vehicle after drinking quite a bit, he made no attempts to swerve or brake and he did not stop after hitting victim in order to render aid. Therefore, we find that there was sufficient evidence to enable a rational trier of fact to conclude, beyond a reasonable doubt that no one but defendant could have caused the victim's injuries and that he was criminally negligent since his conduct evidences "such a disregard of the interest of others that [it] amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."

ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error, defendant argues that "the trial court erred in overruling and denying defendant's motion for a mistrial based on the prosecutor's statements in closing argument dealing with defendant's failure to testify and not giving a statement while under arrest at the police station." In brief to this court, *559 defendant also argues that the prosecutor erroneously elicited testimony concerning defendant's post-arrest silence.[1] We will discuss this latter point first.
During the trial, the prosecutor questioned one of the arresting officers as follows:
"Q. All right. Did he cease talking at this point?
"A. Yes Ma'am.
"Q. All right. Did he give any further statements or did he assert his right to remain silent at this point?
"A. He asserted his right...."
At this point defense counsel objected to the questioning arguing that reference to defendant's post-arrest silence violated his constitutional rights. The objection was overruled but the trial judge admonished the jury that no significance should be attached to a person's assertion of his right to remain silent.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that because an accused's post-arrest silence is "insolubly ambiguous" and a jury is apt to draw inappropriate inferences from the fact that a defendant chose to remain silent, "... the use for impeachment purposes of petitioner's silence at the time of arrest and after receiving Miranda warnings, violated the Due Process clause of the Fourteenth Amendment." In State v. Montoya, 340 So.2d 557 (La.1976), this Court held that the decision in Doyle also applied to instances where a defendant did not take the stand. It was noted therein that "there is even less justification ... for the state to call attention to his silence at the time of arrest than there is in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest. Therefore, Montoya held that it was reversible error for the prosecutor to elicit testimony from the arresting officer concerning defendant's post-arrest silence.
In this case, however, the reference to defendant's post-arrest silence does not appear to be for the purpose of simply calling the jury's attention to it or having the jury make an inappropriate inference. When the objected to questioning is read in context with the rest of that officer's testimony, it is clear that the reference was made in an attempt to show that the entire statement made to the officers had been provided to the jury. According to the witness police officer, defendant was advised of his Miranda rights and then willingly answered a succession of questions. He made some statements that were exculpatory and some that were inculpatory in effect. The reference to defendant's post-arrest silence arose at the close of the officer's testimony and was more a way of exploring how the interrogation was concluded than an effort to call attention to the silence.
Also, defendant's post-arrest silence did not remain "insolubly ambiguous". Doyle v. Ohio, supra. There was testimony presented which indicated that defendant answered all the officer's pertinent questions including the fact that he did not know how the damage to his car had occurred. He told the officers that he had left a nightclub sometime after midnight and had driven home along the same route where the victim was found. He admitted that he had been drinking at the nightclub during the evening and that he left the nightclub alone. But he stated that he had not been involved in an accident on his way home and that he did not know how the damage to his car had happened. Thus, it was more reasonable for the jury to infer *560 that the defendant was not, rather than that he was, avoiding giving incriminating admissions when he invoked his right to remain silent.
For the foregoing reasons and notwithstanding that the interrogation came dangerously close to offending defendant's significant constitutional right to remain silent, we feel that the defendant was not prejudiced by this reference to his post-arrest silence and a reversal of the conviction because of the reference is not warranted.
Additionally, however, reversal of the conviction would not be the proper remedy in this case because defense counsel did not make a motion for a mistrial at the time the improper questioning occurred. Defendant's objection to the district attorney's question followed not only the question, but also the response to the question by the police officer. Therefore, the questionable remarks had already been made and the jury exposed to the fact that the defendant did at some point assert his Fifth Amendment right to remain silent. Sustaining the objection at that point would have done little to purge the answer from the jury's mind. A sustaining of the objection would have only prevented the prosecutor from pursuing that line of questioning. However, the prosecutor here did in fact desist from that line of questioning after the defense objection. Furthermore, although the trial judge did overrule the objection, he nevertheless admonished the jury not to place any significance on the fact that a person chooses to remain silent rather than answer questions because every person has the right to remain silent. It was incumbent on defense counsel at this point to move for a mistrial if that was the action desired.
Under La.C.Cr.P. art. 771, where the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial judge is required, upon the request of the defendant or the state, promptly to admonish the jury. In such cases where the trial judge is satisfied that an admonition is not sufficient to assure the defendant a fair trial, upon motion of the defendant, the trial judge may grant a mistrial.[2]
In the present case, defense counsel moved for neither an admonition nor a mistrial. The admonition that was given by the trial judge was unsolicited. Without having made a motion for mistrial, the defendant got all the relief to which he was entitled when the trial judge, while perhaps erroneously overruling defendant's objection, gave the admonition which he did to the jury. State v. Hamilton, 356 So.2d 1360 (La.1978). To hold otherwise would allow the defendant, after a trial error has been made, to sit back silently and not call the court's attention to the error at the time when it could be remedied, insuring his right to a reversal on appeal if convicted, but proceeding with the trial in hopes of an acquittal. Such procedural tactics are not permitted. It is for this reason that procedural rules have been devised requiring the offended party to call any error to the judge's attention at a time when it can be remedied. Then, upon an erroneous ruling by the trial judge, the party has preserved his right to seek relief on appeal.
This procedural posture, coupled with the negligible potential for prejudice discussed above, prompts us to find this argument without merit.
Next, defendant argues that the trial court erred in not granting him a mistrial because of the prosecutor's comments in his rebuttal argument to the jury.
In his rebuttal argument, the prosecutor said:
"Now, as I told you before, because the defendant left the scene, we can't prove degree of intoxication. We don't have a blood alcohol or breath test and, of course, if the defendant had had nothing *561 to hide, he wouldn't have fled the scene and if the way that this happened was what happened, why didn't he tell the Officers in April."
Defense counsel objected at this time and moved for a mistrial. He argues that the trial judge erred in refusing his request because under La.C.Cr.P. art. 770, a mistrial is mandatory upon motion of defendant where reference is made by the district attorney to "[t]he failure of the defendant to testify in his own defense."
When the above comment is read in context with the rest of the prosecutor's rebuttal argument, and with the defense argument which the prosecutor was rebutting at the time, it is clear that the prosecutor was not referring to defendant's failure to testify in his own defense at trial. Nor was he referring to defendant's post-arrest silence. Rather it was a reference to an inconsistent statement defendant made when questioned by the police officers in April.
Defense counsel in closing argument had suggested among other possibilities that the defendant may have, without gross negligence, struck the victim and fled the scene because he panicked. The district attorney's argument, in effect, was a rebuttal to defense counsel's version of the accident, i. e., if the accident happened the way defense counsel is suggesting that it did or might have, then why did the defendant, when he spoke to the police officers in April, state that he had not been involved in an accident at all, rather than that he fled the scene out of fear, if that was what really happened. While it is perhaps true that the prosecutor could have been a bit more careful about the words she chose, the intent of the prosecutor clearly was to refer to the inconsistent statement that the defendant did make rather than to any silence on his part. Of course, since the defendant's statement that he had not been involved in an accident was properly admitted at trial, such a reference to it was properly within the scope of closing argument by the prosecutor. La.C. Cr.P. art. 774. Therefore, we find no error in the trial judge's refusal to grant a mistrial based on the prosecutor's remark.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error defendant argues that the trial court erred in overruling his objection to the introduction of oral statements he made to the officers. He challenges the free and voluntary nature of his statements on the ground that he was intoxicated at the time of the interrogation.
In support of his argument, defendant offers the testimony of Lt. Beckham of the Monroe Police Department who stated that at 6:30 A.M. when defendant was awakened, he did not appear fully alert and did appear to be somewhat groggy. Defendant also relies on the testimony of Trooper Lewis, in support of his argument, who stated that defendant appeared to be still "under the influence." Trooper Lewis also stated, "If I would have stopped him driving and he appeared as he appeared at that time, I would have advised him of his rights and run him through the process for DWI." There is no other evidence to support defendant's argument that he was intoxicated at the time he was interrogated.
The question presented by this assignment of error is whether the above testimony of the officers is sufficient evidence of defendant's intoxication to support his challenge to the free and voluntary nature of the confession.
This court recently reiterated the standards for introducing a confession into evidence in State v. Robinson, 384 So.2d 332 (La.1980):
"Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights."
In the instant case, there was uncontroverted testimony from two police officers, *562 Martin and Beckham, and one state trooper, Lewis, that defendant freely and voluntarily made the statements in the presence of his parents after receiving the proper Miranda warnings. All of these officers testified that although defendant appeared groggy, he seemed to understand his rights. Trooper Lewis also testified that although defendant did appear to have been drinking, he did not notice any physical defects or anything else along that line.
In Robinson supra, this court addressed the issue presented here, a challenge to the voluntariness of a confession on the basis of intoxication, and stated:
"Where the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he was saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Rankin, 357 So.2d 803 (La.1978). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977)."
The trial judge in the instant case determined that the confession was admissible. Since the testimony of the three law enforcement officers supports the judge's decision, and there is no controverting testimony, the judge's conclusions should not be overturned.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error defendant argues that the trial court erred in sentencing defendant to five years at hard labor because the judge did not comply with the guidelines of La.C.Cr.P. art. 894.1 and because the sentence was excessive.
Sentencing began with the trial judge allowing defendant to make a statement. Defendant informed the court that he had placed himself in an alcoholic treatment center after which he entered the Substance Abuse Clinic seeking to overcome his alcohol and drug abuse problem. At this time, he was working part-time for his father's tax service and part-time for his father-in-law's service station. The defendant claimed not to have had a drink since the trial in October.
The court listed defendant's prior convictions: possession of marijuana, 1970, at which time the charge was classed as a felony but the judge gave defendant three years probation; possession of marijuana again in 1973, for which defendant received six months imprisonment; and now the current charge, negligent homicide. The judge read the probation report that defendant had admitted being on alcohol and amphetamines the night of the accident. He noted that defendant's drug and alcohol abuse covered a ten year period.
The judge noted the seriousness of the crime and found no mitigating circumstances. He decided that, since a man's life was ended, any sentence less than imprisonment would deprecate the seriousness of the crime. Defendant's ten year abuse of drugs and alcohol had culminated in the death of another human being such that defendant now needed a period of institutional confinement. Accordingly, the trial court imposed a maximum sentence of five years imprisonment at hard labor.
Defendant alleges that the trial judge did not follow the guidelines of Art. 894.1 and that the sentence imposed was excessive. It has been determined that excessiveness of sentence poses a question of law reviewable under the appellate jurisdiction of this court. State v. Sepulvado, 367 So.2d 762 (La.1979). Sepulvado further states that the trial court must articulate specific reasons for an apparently severe sentence in relation to the particular offender *563 and the actual offense. While the trial court need not articulate every aggravating and mitigating circumstance presented in 894.1, the record must reflect that it adequately considered these guidelines in particularizing the sentence to the defendant. State v. Vaughn, 378 So.2d 905 (La.1979); State v. Franks, 373 So.2d 1307 (La.1979). Thus, while the defendant's sentence here does not exceed the maximum allowed under R.S. 14:32 (five years), the sentence may nonetheless be reviewed to determine if the trial court complied with Art. 894.1 and if it exceeded its discretion in sentencing. As a general rule, a sentence is excessive, "if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering." State v. Bonanno, 384 So.2d 355, 357 (La.1980).
In the instant case, the judge did not particularize the history of the defendant. Although he did not articulate every aggravating and mitigating circumstance presented in La.C.Cr.P. art. 894.1, the record reflects that he adequately considered these guidelines, as demanded by the court in State v. Guiden, 399 So.2d 194, 200 (La.1981). He let the record reflect that he considered not only the seriousness of the offense and the past history of the defendant, but also defendant's personal history, particularly his "... potential for rehabilitation." State v. Molinet, 393 So.2d 721 (La.1981); State v. Jones, 398 So.2d 1049 (La.1981); State v. Jackson, 360 So.2d 842 (La.1978).
The trial court left some gaps in the personal background of the defendant, but nevertheless, the judge's familiarity with the defendant, coupled with the sufficiently complete record left by the judge, indicates that the sentence in this case was not imposed in an arbitrary manner and is not excessive. State v. Williams, 397 So.2d 1287 (La.1981). This case is defendant's third conviction over a ten year span which involved drug abuse, and it culminated with the death of another human being. On this record, the maximum penalty, five years, is not disproportionate to defendant's conduct, nor a clear abuse of the trial court's broad sentencing discretion. State v. Bonanno, supra; State v. Spencer, supra.
This assignment lacks merit.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, and Judges Thomas J. Kliebert and Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.
[1] It is well settled that this court will not review allegations of error that are not contained in formal assignments of error. While it seems that this argument (that testimony was elicited concerning defendant's post-arrest silence) was not presented in the assignment of error lodged in the trial court, we prefer to address the issue, giving the defendant the benefit of the doubt that it is covered by Assignment of Error Number Four which is on a similar point and arguably ambiguous, than to deny him appellate review of the issue on this technical ground.
[2] As pointed out by this court in State v. Smith, 336 So.2d 867 (La.1976), La.C.Cr.P. art. 770, with its mandatory mistrial provision, does not apply to references to defendant's post-arrest silence by the prosecutor or by witnesses, but only applies to references to defendant's failure to testify at trial. La.C.Cr.P. art. 771 is the applicable provision concerning the proper remedy where references are made to a defendant's post-arrest silence.