635 So.2d 725 (1994)
STATE of Louisiana
v.
Donald J. STELLY.
No. 93 KA 1090.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
*726 Richard J. Ward, Jr., Dist. Atty., Maringouin, and Michael E. Parks, Asst. Dist. Atty., New Roads, for State.
Edward J. Lopez, Opelousas, for defendant-appellant Donald J. Stelly.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
Donald J. Stelly was indicted with attempted forcible rape, a violation of LSA-R.S. 14:27 and 14:42.1. He pled not guilty and, after trial by jury, was convicted of the responsive offense of attempted simple rape, a violation of LSA-R.S. 14:27 and 14:43. The court sentenced him to serve a term of five years imprisonment at hard labor, with credit for time served. The court suspended the sentence and placed him on supervised probation for five years with special conditions (including serving one year in the parish jail). Defendant has appealed, urging four assignments of error.

FACTS
On the evening of January 7, 1992, the victim, a young female college student, was on her way back to school in Baton Rouge after being home for the holidays. She was driving a new car and was traveling alone. In Krotz Springs, she stopped at an Exxon station to use the restroom and make a purchase. Before she went into the store, a pickup truck pulling a camper pulled up behind her. Although the truck obviously was blocking the victim's car, the driver of the truck, later identified as being defendant, asked the victim if he was blocking her. Because the victim was about to go into the store, she told the man that it was alright, but that he would have to move the truck *727 when she was ready to leave. The victim then went into the store. When she returned to her car, the truck was moved, but the driver came to her window and asked her if she wanted to talk. The victim thought defendant was behaving strangely and declined his request. She then proceeded on her way to Baton Rouge.
She partially traversed a bridge which crosses the Morganza Spillway, when she realized she had a flat tire. Frightened by her situation and concerned because the bridge did not have a shoulder, the victim put on her emergency lights and attempted to secure assistance. Defendant pulled his vehicle next to the victim's car and told her that he would help and would be waiting for her at the end of the bridge. At the end of the bridge, defendant told the victim she had a flat tire and asked if she had a spare. Unfamiliar with her car, the victim said she did not think so. After defendant appeared to look for the spare, he announced that the victim did not have one. When the victim indicated that she was on her way to Baton Rouge, defendant said he lived there and would bring her to Baton Rouge. The victim accepted defendant's offer because she did not know where else she could go. She offered to pay him for the trip. Defendant then helped put the victim's bags into the back of his truck, and they proceeded in defendant's truck toward to Baton Rouge.
After a short distance, defendant asked the victim if she would rather have sex with him instead of paying him. Shocked, the victim said no and insisted that defendant take her back to the Exxon station in Krotz Springs. Defendant agreed and turned the truck around. Shortly before reaching the Atchafalaya River Bridge, defendant pulled his truck off onto a side road, explaining that he needed to get a beer out of his camper. This action frightened the victim. She felt that she was trapped between the woods in one direction and defendant in the other. She was concerned that defendant would kill her, and she did not know what he was going to do in the camper. She offered to buy him beer at the station, but defendant refused. When defendant returned to the truck, he grabbed the victim's arm, aggressively pulled her towards him, and kissed her on the lips. Despite the victim repeatedly telling defendant that she did not want to have sex with him, he persisted even after the victim established that she was menstruating. When the victim attempted to open the door, defendant grabbed both of her wrists and pulled her back. Continuing to ask the victim to have sex with him, defendant began squeezing her breasts and pushing her down in the truck. In an effort to provide a chance for escape, the victim finally told defendant that she would have sex with him, but that she wanted to do it outside of the truck. Surprised by the victim's response, defendant let go of her. The victim then got out of the truck, ran across the highway, and turned towards Krotz Springs. Frantically trying to escape, the victim ran in front of several large trucks, hoping someone would stop to help her. When she was halfway over the bridge, defendant pulled alongside her. He apologized and told her that he had left her belongings at the Exxon station. The victim kept running. When the victim arrived at the station, her elbows were bleeding, and she had blood on her ankles. A woman at the station called the police.
When the police arrived, the victim gave a description of her attacker. A wrecker arrived to move her car, and the wrecker driver and the police officer discovered the victim's spare tire in her trunk. A couple of days after the offense, at the request of a detective with the Pointe Coupee Parish Sheriff's Office, the victim viewed a surveillance tape which had been recorded at the Exxon station. While viewing the tape, the victim identified both herself and her attacker. A detective with the St. Landry Parish Sheriff's office also viewed the tape, and afterwards the detectives prepared a photographic display, including defendant's picture. After viewing the photographs, the victim selected defendant's picture without hesitation. On January 9, 1992, defendant was arrested at his campsite in Lottie, off the Morganza Spillway.
Defendant testified in his own defense. He indicated that he lived in Opelousas and denied telling the victim that he lived in Baton Rouge. Defendant admitted stopping *728 to help the victim with her car, but denied looking for a spare tire. He claimed that he and the victim did not discuss going to Baton Rouge and that he agreed only to take the victim back to Krotz Springs. Defendant testified that he stopped the truck before going over the bridge because he needed to use the bathroom. He denied saying that he wanted to get a beer. Defendant claimed that, when he returned to the truck, he reached over to hug the victim only in an effort to comfort her. He explained that the victim had been crying when he stopped to help her and that she still was crying when he returned to his truck. Defendant admitted that the victim got out of his truck and ran across the highway after this "hug," but he denied kissing the victim or asking her to have sex with him.

DENIAL OF MOTION FOR MISTRIAL
In assignment of error number one, defendant argues that the court erred when it failed to grant a mistrial, or at least give an admonishment to the jury, when the state elicited testimony from a witness that defendant did not make any statements after his arrest.
At the conclusion of the testimony of Brett Robillard, the investigating detective from the Pointe Coupee Parish Sheriff's Office, the state questioned Robillard about the photographic display which was shown to the victim. The state then asked, "Did Donald Stelly, after he was arrested and advised of his rights, did he give you any statements?" Robillard responded, "No, sir, he didn't." Defendant's attorney objected. In response, the court indicated that the question had been asked and answered but cautioned the prosecutor. At defendant's request, the court removed the jury. Defendant then moved for a mistrial, arguing that the state improperly questioned the officer concerning defendant's failure to make a statement after his arrest. The court overruled the objection and denied the motion for mistrial. Defendant then requested an admonishment, which the court denied. After the jury returned, the state tendered the witness for cross-examination.
The United States Supreme Court has held that, because an accused's post-arrest silence is "insolubly ambiguous" and a jury is apt to draw inappropriate inferences from the fact that a defendant chose to remain silent, "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Doyle v. Ohio, 426 U.S. 610, 617 & 619, 96 S.Ct. 2240, 2244 & 2245, 49 L.Ed.2d 91 (1976).[1] This ruling also applies to instances where a defendant does not take the stand. In such a situation, "there is even less justification ... for the State to call attention to his silence at the time of arrest than there was in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest." State v. Montoya, 340 So.2d 557, 560 (La.1976). See State v. Kersey, 406 So.2d 555, 559 (La.1981).
The Louisiana Supreme Court has indicated that, under the authority of article 771 of the Code of Criminal Procedure, where the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial court is required, upon the request of the defendant or the state, promptly to admonish the jury. In such cases where the court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, upon motion of the defendant, the court may grant a mistrial. State v. Kersey, 406 So.2d at 560.
In the instant case, the reference to defendant's post-arrest silence does not appear to be for the purpose of simply calling the jury's attention to it or having the jury make an inappropriate inference. See State v. Kersey, 406 So.2d at 559. When read in context with the entirety of the detective's testimony, it is clear that the reference was made in an attempt to summarize the extent of the detective's investigation. Although the trial essentially was a "swearing match" between the only two witnesses to the offense, *729 there is no indication that the state deliberately intended to exploit defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense. See State v. Arvie, 505 So.2d 44, 47 (La.1987). Although the court did not sustain defendant's objection, the prosecutor did not pursue the line of questioning any further. The reference to defendant's post-Miranda silence was brief, and the trial as a whole was conducted fairly. Under these circumstances, a mistrial was not warranted, and the court's failure to admonish the jury was harmless beyond a reasonable doubt. See State v. Smith, 336 So.2d 867, 869-70 (La.1976); State v. Mays, 612 So.2d 1040, 1048 (La.App. 2nd Cir.), writ denied, 619 So.2d 576 (La.1993); State v. Hicks, 483 So.2d 1200, 1202 (La.App. 4th Cir.), writ denied, 488 So.2d 197 (La.1986).
Additionally, reversal of the conviction would not be appropriate because, as the trial court recognized, defense counsel did not object to the state's question until after the detective had already responded to the question. Therefore, the questionable remarks had already been made and the jury had been exposed to the fact that defendant made no statements to the detective. See State v. Kersey, 406 So.2d at 560. The assignment of error is without merit.

FAILURE TO PROVIDE AUDIO-VISUAL EQUIPMENT
In assignment of error number two, defendant maintains that the court erred when it refused to set up equipment capable of playing the surveillance videotape from the Exxon station. Defendant speculates that the tape might have discredited the victim's testimony by showing whether the victim and defendant were present at the station together and by showing that defendant was clean shaven rather than bearded as the victim claimed.
After the state rested, defense counsel asked the court to "direct the fetching and the setting up of video tape equipment for this Jury to review the tape." Counsel was referring to the surveillance videotape which was viewed by the victim in the initial effort to identify the assailant. Earlier the state had indicated it would not be introducing the tape because of its poor quality. After determining that neither defense counsel nor the state had the necessary equipment available in court that day, but that defendant's attorney had such equipment at home, the court denied defendant's request. The court indicated that it did not have the equipment and that it was not going to order anyone else to bring the equipment. The court noted that counsel had indicated his readiness for trial. When the court referred to the discovery procedures available to defendant, defense counsel admitted that he had known of the tape's existence prior to trial.
We find no support in the record for the prejudice that defendant claims he suffered as a result of the court's failure to provide the equipment. Counsel's speculations concerning the contents of the tape are not supported by the record, and counsel did not proffer the tape as evidence. See LSA-C.E. art. 103A(2). When defense counsel indicated his readiness for trial, he knew of the tape's existence. He admitted that he had the necessary equipment at home, and he did not request a recess to allow him time to secure his equipment. Under these circumstances, the court did not err when it denied defendant's request. The assignment of error lacks merit.

DENIAL OF MOTION FOR POST VERDICT JUDGMENT OF ACQUITTAL AND INSUFFICIENT EVIDENCE
In assignment of error number three, defendant claims that the court erred when it denied his motion for post verdict judgment of acquittal. In assignment of error number four, defendant claims that the evidence was insufficient for the jury to have found defendant guilty of attempted simple rape beyond a reasonable doubt. The basis of defendant's argument is that, under the facts of this case, attempted simple rape was not an appropriate verdict because that offense is committed only under certain circumstances, none of which were present in this case.
Simple rape is defined as "a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful *730 consent of a victim who is not the spouse of the offender" because it is committed under one of three circumstances. Briefly, these circumstances are (1) the victim is incapable of resisting because of an intoxicated condition; (2) the victim is incapable of understanding the nature of the act because of an unsound mind; or (3) the victim submits under the belief that the person committing the act is her husband. LSA-R.S. 14:43 A. The statutorily listed responsive verdicts for attempted forcible rape are: guilty, guilty of attempted simple rape, and not guilty. LSA-C.Cr.P. art. 814 A(11).
Even if an offense is legislatively designated as responsive by article 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). However, absent a contemporaneous objection, a defendant cannot complain if the jury returns a legislatively approved responsive verdict (such as attempted simple rape in the instant case), even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024, 1034 (La.1988); State v. Jones, 598 So.2d 511, 514 n. 1 (La.App. 1st Cir. 1992). See also State ex rel. Elaire v. Blackburn, 424 So.2d at 251-52.
Defendant admits that he did not file a motion to exclude attempted simple rape as a responsive verdict. See LSA-C.Cr.P. art. 814 C. Although he claims that he told the trial court in chambers that the jury should not be charged on attempted simple rape, there is nothing in this record to support his claim. Instead, the record shows that defendant did not object to the instructions and that the court specifically noted the lack of any objections to the instructions. As the state appears to concede on appeal, the facts of this case do not establish all of the elements of attempted simple rape. However, because defendant did not object, he is entitled to relief only if the evidence is insufficient to support the charged offense.
Rape is defined as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." LSA-R.S. 14:41 A. Forcible rape is defined as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
LSA-R.S. 14:42.1 A. The elements of an attempted offense are as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
LSA-R.S. 14:27 A. Specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1).
Thus, to prove the crime of attempted forcible rape, the state is required to establish beyond a reasonable doubt that the defendant actively desired to commit rape by preventing the victim from resisting the act by force or threats of physical violence where the victim may reasonably believe that such resistance would not prevent the rape. See State v. Magee, 491 So.2d 454, 457 (La.App. 1st Cir.1986). Evidence that an offender forcibly grabbed the victim while announcing his intent to commit an act of sexual intercourse will support a conviction for attempted rape. State v. Trackling, 609 So.2d 206, 208 (La.1992) (per curiam). *731 Where the offender has the requisite intent to commit a forcible rape and does an act in furtherance of his goal, he has committed the offense of attempted forcible rape even if his victim successfully repels the threat or force. State v. Magee, 491 So.2d at 457.
In the instant case, the evidence is sufficient to support the charge of attempted forcible rape. After being stranded in her automobile because of a flat tire, the victim accepted defendant's offer to drive her to Baton Rouge. The victim offered defendant gas money to compensate him for his troubles. However, once the victim was inside defendant's vehicle, he inquired as to whether the victim would engage in sexual relations with him instead.
Despite the victim's repeated protestations that she did not wish to engage in sexual relations with defendant, defendant aggressively grabbed the victim, pulling her toward him. He then kissed her on the lips. Thereafter, defendant grabbed both of her wrists and her breasts and maneuvered his body on top of the victim's, pushing her head into the truck door and hurting the victim's head, neck, and back. Defendant's intent to engage in sexual relations with the victim was evident. Defendant repeatedly demanded that the victim engage in sexual relations. Additionally, despite the victim's attempt to repel his advances by explaining that she was menstruating, defendant replied that he had condoms in his camper.
Further, the victim was able to delay defendant's forced sexual advances on the pretext of agreeing to engage in sexual relations with him if they could exit the truck. After freeing herself from defendant's grasp, the victim escaped by jumping from defendant's truck, falling on her hands and knees, and running across the highway and back to the Exxon station.
Clearly, defendant's conduct, in repeatedly applying force to the victim's person, despite her repeated protests and pleas to be left alone, coupled with defendant's statements to the victim which manifested his intent to engage in sexual intercourse with her, sufficiently established the offense of attempted forcible rape. See State v. Turnbull, 377 So.2d 72, 77 (La.1979). Moreover, although defendant contends that the state failed to prove the elements of attempted simple rape, he does not claim that the state failed to prove the elements of attempted forcible rape. After reviewing the entirety of the trial testimony in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of attempted forcible rape beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); LSA-C.Cr.P. art. 821 B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). Accordingly, because the evidence was sufficient to support the charged offense (attempted forcible rape), these assignments of error are without merit.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In Doyle, the Court rejected the state's position that it should be allowed to introduce evidence concerning defendant's silence at the time of arrest to create an inference that defendant's trial testimony was a fabrication. 426 U.S. at 616, 96 S.Ct. at 2244.