JOAN BERNARb ARMSTRONG, Chief Judge.
^STATEMENT OF CASE
On April 23, 2007, the State filed a bill of information charging the defendant, Ronald R. Buckley, with three counts of aggravated battery, violations of La. R.S. 14:34. He entered a not guilty plea on April 26, 2007. The record indicates that the defendant waived pre-trial motions. Trial was conducted on November 13, 2007. After the close of evidence, the jury found the defendant guilty of one count of aggravate ed battery.
On March 19, 2008, the trial court sentenced the defendant to five years at hard labor in the custody of the Department of Corrections with credit for time served. The State then filed a multiple bill of information, alleging the defendant to be a three-time felony offender. The record indicates that the multiple bill hearing is pending. On appeal, the defendant raises one assignment of error.

STATEMENT OF FACT

At trial, Charles Rinkus testified that he witnessed an incident on the riverfront on April 8, 2007. Mr. Rinkus stated that on the day of the incident, he was walking on the riverfront when he saw the defendant run out of some bushes 12and attack a man, woman, and two children with a pipe. Mr. Rinkus noted that he saw the defendant hit several people with the pipe. Mr. Rin-kus also testified that the man, woman, and two children were within five feet of one another and that he was ten feet from the defendant at the time of the attack. Further, Mr. Rinkus observed that the man, woman, and two children had, prior to the attack, walked past the bushes from which the defendant eventually emerged. Mr. Rinkus also testified that after the attack began he saw another man with a garbage can approach the defendant and attempt to use the garbage can as a shield in order to check defendant from hitting anyone else. Mr. Rinkus noted that the man used the garbage can in a defensive manner
Otis Duvernay testified that on the date of the incident he was employed by the Aquarium of the Americas as a security guard and that he was a witness to the underlying incident. Mr. Duvernay testified that when he first came on the scene, he saw the defendant swinging a pipe and one of the victims holding a rubber trash can in an attempt to block defendant’s attempts to hit him with the pipe. Mr. Duvernay also testified that he never saw the victim hit the defendant with the trash *887 can or use it in an offensive manner. After Mr. Duvernay arrived on the scene, he ordered the defendant to put the pipe down on the ground and also to lay face down on the ground. Mr. Duvernay testified that the defendant complied with both requests. Additionally, Mr. Duvernay testified that the incident was captured by the Aquarium of the America’s security cameras. Mr. Duvernay identified the video tape that contained a recording of the incident. The State introduced the video tape into evidence, and it was then played back for the jury.
Officer Earl Brown, a Harbor Policeman with the Port of New Orleans, testified that he arrested the defendant on April 8, 2007, in connection with the [¡¡incident at issue. Officer Brown testified that when he came on the scene he observed the defendant lying on the ground in the custody of Aquarium of the America’s security guards. Thereafter, Officer Brown arrested the defendant and took him into custody.
Officer Sean Adam Rabennack also testified at trial. Officer Rabennack stated that he was employed as a Harbor Policeman by the Port of New Orleans and participated in an arrest of the defendant on April 8, 2007. Officer Rabennack testified that when he arrived on the scene he observed the defendant in the custody of Officer Brown and Mr. Duvernay. Officer Rabennack stated that he was able to recover the pipe used by the defendant in connection with the attack. Officer Ra-bennack identified the pipe in court, and the State introduced it into evidence.
Richard Michael Mustacchia testified that on April 8, 2007, he, his wife, and his two children were walking on the riverfront and heading towards the Aquarium of the Americas. Mr. Mustacchia testified that as they neared the aquarium he turned around to tell his wife to hurry up when he heard an older man yell “watch out, watch out.” Mr. Mustacchia further stated that he then noticed a man dive out of some nearby bushes swinging a piece of metal. At trial, Mr. Mustacchia identified the man as the defendant. The defendant then hit Mr. Mustacchia’s daughter across the back with the metal object. Mr. Mus-tacchia then tried to grab his daughter and throw her out of the way but the defendant was able to strike Mr. Mustacchia’s daughter with the metal object several more times on the back and legs. Eventually, Mr. Mustacchia’s daughter was moved out of the way, and the defendant then proceeded to chase after Mr. Mustacchia’s wife and other daughter. Mr. Mustacc-hia’s wife threw herself over their other daughter, and the defendant |4then proceeded to hit Mrs. Mustacchia several times with the metal object. Mr. Mustacc-hia next testified that the defendant started to run back towards his other daughter, but that he was able to tackle the defendant. The defendant then got up and started to run back towards Mrs. Mustacc-hia. Mr. Mustacchia stated that another man threw him a garbage can and that he was able to use the garbage can to deflect the blows. Mr. Mustacchia testified that he only used the garbage can to block the defendant’s blows. He testified that the defendant struck him with the metal object on the arms and chest. On cross-examination, Mr. Mustacchia testified that he has a prior conviction. He testified that he pled guilty in Jefferson Parish to possession of cocaine with intent to distribute and was placed on five years active probation.
Mr. Mustacchia’s wife, Darlene Sullivan Mustacchia, testified that she was the victim in an incident that occurred on April 8, 2007. Mrs. Mustacchia testified that they had just eaten lunch and were walking towards the aquarium on the riverfront. Mrs. Mustacchia testified that she and her *888 daughter Brooke were separated by her husband and daughter Brittany by a distance of approximately one-half block. Mrs. Mustacchia testified that her husband had been playfully yelling at her and her daughter to hurry up when she heard a scream. Mrs. Mustacchia testified that she then saw a person swinging an object and hitting her daughter Brittany. She then observed her daughter fall to the ground. Mrs. Mustacchia identified the defendant in court as the assailant. Mrs. Mustacchia then observed her husband throw their daughter out of the way. Mrs. Mustacchia and her daughter Brooke then ran towards Brittany. After grabbing Brittany, Mrs. Mustacchia then noticed that the defendant was running towards her and her daughter Brooke. Mrs. Mus-tacchia put Brooke behind her but the defendant kept | {¡trying to strike Brooke. Eventually, the defendant struck Mrs. Mustacchia in the leg with the metal object, causing her to fall to the ground. As she fell, Mrs. Mustacchia grabbed Brooke and put her between her and the ground. Mrs. Mustacchia noted that the defendant never tried to rob her or her family. Mrs. Mustacchia testified that the defendant then started to run towards her and her daughters when Mr. Mustacchia tackled him. However, Mrs. Mustacchia noted that the defendant was getting the better of Mr. Mustacchia when she saw another person throw Mr. Mustacchia a garbage can, which Mr. Mustacchia used to block the defendant’s blows. Mrs. Mustacchia noted that her husband did not attack the defendant with the garbage can but rather used it to protect himself.
The State’s final witness was Brittany Mustacchia. Brittany, a minor child, testified that she saw the defendant jump out and hit her, her sister, and her mother with a crowbar. Brittany also testified that the defendant never said anything to her father and that they never said anything to the defendant. Brittany testified that the defendant struck her on the neck, shoulders, and back. Brittany also testified to witnessing her father fight the defendant with the garbage can. Following Brittany’s testimony, the State rested its case.
The defendant testified on his own behalf. The defendant testified that he was born in Kentwood, Louisiana, and has lived in the state his entire life. The defendant noted that he remembered the incident at suit. He said that he initially arrived at the riverfront around 1:00 p.m. He claimed that when he arrived at the riverfront he was not mad or upset about anything but was instead tired. Accordingly, he maintained that he took a nap near some hedges down by the riverfront. The defendant alleged that as he was napping, something brushed against, or startled him and he woke up. Upon waking up, the first thing the ^defendant saw was Mr. Mustacchia approximately two feet away. The defendant testified that Mr. Mustacchia came after him so he began to run. Mr. Mus-tacchia tried to grab the defendant but the defendant tripped and fell over a wall, taking Mr. Mustacchia with him. The defendant testified that when he and Mr. Mustacchia were on the ground, he found a metal pipe and used it to defend himself. Further, the defendant contended that Mr. Mustacchia, in response, grabbed a garbage can and used it against him in the altercation. Shortly thereafter, a group of people had crowded around them, and the defendant testified that he stopped swinging the pipe.
The defendant further testified that he was attacked by Mr. Mustacchia. Nevertheless, after listening to the State’s witnesses, the defendant admitted that he could have misperceived Mr. Mustacchia as being the aggressor. The defendant could not say for certain whether he had *889 struck any of the Mustacchias with the pipe. Moreover, he testified clearly that he never attempted to strike Brittany or Mrs. Mustacchia with the pipe. The defendant admitted that he had been convicted in 1995 for automobile theft.

ERRORS PATENT

A review of the record reveals no errors patent.

DISCUSSION

In his sole assignment of error, the defendant contends that the trial court erred when it permitted the State to make reference to his post-arrest silence when impeaching his trial testimony. Under La. C.Cr.P. article 771, when the prosecutor l7or a witness makes a reference to a defendant’s post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. In such cases where the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant. State v. Kersey, 406 So.2d 555, 559 (La.1981). The granting of a mistrial is within the discretion of the trial court if the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial. State v. Procell, 365 So.2d 484, 491 (La. 1978).
The record shows that the trial as a whole was conducted fairly and the evidence in favor of a guilty verdict was overwhelming. Under these circumstances, a mistrial was not warranted. While the defendant was entitled to an admonishment for the prosecutor’s remarks, he did not request it. Nonetheless, the failure of a trial court to admonish the jury is considered harmless error when there is considerable evidence of the defendant’s guilt. State v. Jones, 94-0926 (La.App. 4 Cir. 12/28/94), 648 So.2d 472, 480.
An error is harmless when it can be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. State v. McQuarter, 2000-1553 (La.App. 4 Cir. 6/6/01), 788 So .2d 1266.
In the case at bar, the colloquy at issue occurred during the defendant’s cross-examination:
Q. Did you tell Officer Duvernay what happened?
18Mr. Weg: I’m going to object that violates the Fifth Amendment, your honor.
Mr. Clark: Judge, I’m just asking if he reported any incident.
The Court: I’ll overrule that.
Examination by Mr. Clark:
Q. Did you report to Officer Duvernay what happened?
A. No.
Q. Did you report to Officer Brown?
A. No.
Q. Officer Benjamin?
A. No.
Q. Did you report officer?
Mr. Weg: Note a continuing objection—
A. No.
Mr. Weg: — to whether or not Mr. Buckley said anything at any time.
The Court: Thank you. So noted.
Examination by Mr. Clark:
Q. Mr. Buckley, if you felt threatened, why didn’t you speak to any of *890 these officers if a man had just allegedly attacked you?
A. I mean, a lot of things were running through my head. From time past, I’ve been — in New Orleans Parish, I’ve always been one to go to jail. So, I’ve learned a lot of times, don’t’ say nothing, you’re going to jail.
Q. Well, in this case when you—
A. That was my — that was my life.
Mr. Weg: I’m going to object. It’s already been asked and answered, your honor.
The Court: Overruled. You may move on.
|flThe defendant argues that the trial court erred in allowing the State to pursue the foregoing line of questioning because the jurisprudence provides that reference, for. impeachment purposes, to a defendant’s post-arrest silence at the time of, and after he has received the Miranda warnings violates his due process rights. On the other hand, the State notes that the defendant, on direct examination, testified that the trial marked his first opportunity to hear the Mustacchias’ story or relate his own version of the events. The State argues that the defendant, by making the foregoing assertion, was attempting to show that the entire incident was a mistake. Thus, the State asserts that the foregoing assertion opened the door for cross-examination concerning the defendant’s prior opportunities to relay his account of the incident. On the other hand, the State also argues that any reference to defendant’s post-arrest silence did not deprive the defendant of a fair trial, or contribute to his conviction, because the evidence introduced by the State overwhelmingly established the defendant’s guilt.
After reviewing the record, this court concludes that the prosecutor’s comments did not contribute to the jury’s verdict, as there was substantial testimonial and physical evidence of the defendant’s guilt. Specifically, the jury heard testimony from one bystander witness, Charles Rinkus, an aquarium security officer, Otis Duvernay, and three victims. All of the foregoing witnesses testified unequivocally that the defendant attacked the Mustacchi-as with a metal pipe and that the attacks were unprovoked and unwarranted. Further, the jury was able to see an aquarium security video which recorded part of the incident, view photographs of the Mustacc-hias’ injuries, and inspect the metal object used to strike the Mustacchias. Accordingly, our review of the record did not support the | ^defendant’s argument that the State’s reference to his post-arrest silence contributed to the jury’s verdict. Indeed, the jury acquitted the defendant on two of the three aggravated battery charges. Therefore, assuming that the trial court committed error in failing to admonish the jury, such error was harmless.

CONCLUSION

For the foregoing reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.
JONES, J., dissents with reasons.
JONES, J., dissents with reasons.
[ j Ronald Buckley complains that a constitutional defect occurred during his trial, resulting in his entitlement to a new trial. I agree, as this constitutional defect cannot be found to be harmless error. For this reason, I dissent.