681 So.2d 1007 (1996)
STATE of Louisiana
v.
Gregory STEWARD.
No. KA 95 1693.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*1009 Richard Teissier, New Orleans and J. Kevin McNary, Covington, for Defendant-Appellant Gregory Steward.
Walter P. Reed, Covington and William R. Campbell, Jr., New Orleans, for Appellee State of Louisiana.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
WHIPPLE, Judge.
Gregory Steward was charged by bill of information in count one with attempted forcible rape, a violation of LSA-R.S. 14:27 and 14:42.1, and in count two with second degree kidnapping, a violation of LSA-R.S. 14:44.1. Defendant pled not guilty and, after trial by jury, was convicted as charged on both counts. The trial court sentenced defendant to serve a term of five years at hard labor on count one and twelve years at hard labor on count two, to run concurrently to each other, and with credit for time served. The trial court further ordered that one year of the sentence on count one and six years of the sentence on count two be served without benefit of parole, probation or suspension of sentence. Defendant has appealed, urging fifteen assignments of error. The assignments of error designated in the record as numbers six, seven, eight and eleven were not briefed on appeal and, therefore, are considered abandoned. See Uniform Rules Courts of Appeal, Rule 2-12.4.

Facts
On September 14, 1993, Ms. S. H., hereinafter referred to as the victim, was brutally beaten, dragged across a parking lot and ordered to remove her pants. The record reveals that she had spent the evening with two female friends, Miranda Trombatore and Tammy Lange, drinking and playing cards and board games at Tammy's home. She had left her vehicle at Miranda's house, and rode with Miranda to Tammy's home. At some point, the victim decided that she was ready to leave, but Miranda was not. The victim decided to walk back to Miranda's home, which was a couple of blocks off of Ponchartrain Boulevard in Slidell, LA, to get her car and go home.
As she was walking down Ponchartrain Boulevard on the side of the road, an assailant approached her. Initially believing that the man intended to rob her, she began screaming and "slung" her purse to the ground near him. However, the assailant grabbed her instead, and began telling her to shut up, as he repeatedly punched her in the face and pulled her by the hair. She fought with the assailant, who called her derogatory names, and who stated at one point during the struggle that he was going to kill her when she did not stop screaming. While she begged him to stop, he ordered her to take off her pants. Since she was not complying quickly enough, the assailant forcefully pulled off the victim's pants and panties himself.
The assailant continued pulling her away from the well-lit area at the road's edge, and violently pulled her along, resulting in the dislocation of the victim's shoulder. As she kicked and screamed, he continued dragging her away from the road. The struggle continued for several minutes as the assailant pulled her by the hair and arm toward a dark area in the back of a bank. She was dragged over an area of grass and then concrete before the assailant allowed her to get to her feet. As the assailant started to run and pull the victim along beside him, his hand slipped, and she broke free and ran away. At no time during the struggle did the assailant indicate by his words or his actions that he intended to rob the victim, and her purse and *1010 other items were later retrieved from the area where the victim was first attacked by the assailant.
As she ran back to the street, she stopped only long enough to grab her pants. When she reached the street, a man driving a Hubig's Pie truck stopped and picked her up. He drove her to a nearby Time Saver store. She had to ask someone to help her get dressed because she could not do so with a dislocated shoulder. While she was at the Time Saver store being treated by emergency technicians, the police brought the defendant into the Time Saver store for her to identify. Without hesitation, she positively identified defendant as the perpetrator.
Officer James Mathis with the Slidell Police Department stated that he was on routine patrol on the night in question when he observed a blue midsize vehicle approach him from the rear at a high rate of speed. At the time, he was approximately one-half mile from the bank on Ponchartrain Boulevard where the victim was assaulted. He attempted to stop the vehicle, but the driver refused to stop. Instead, the driver continued northbound, and proceeded through a red light and stop sign. Officer Mathis pursued the vehicle at speeds in excess of seventy miles an hour. Minutes later, the vehicle was stopped at a police roadblock set up nearby, and defendant was placed under arrest for reckless operation of a motor vehicle. Officer Mathis then received a call that there had been an attempted rape on Ponchartrain Blvd. and realized that defendant and his vehicle fit the general description in the attempted rape incident nearby.
Todd Sniff, who had been at the Time Saver store before the attack, saw a black male driving a light blue car at a high rate of speed coming out from behind the building from which the victim had run. Officer Kevin Dupuy, who had assisted in stopping defendant at the roadblock, interviewed Mr. Sniff. After hearing Mr. Sniff's description of the vehicle, Officer Dupuy broadcast the message that defendant fit the description of a person seen leaving the scene of the attempted rape. Defendant was then transported to the store, where the victim immediately identified him as the assailant. Defendant was ultimately charged and convicted after a jury trial of one count of attempted forcible rape and one count of second degree kidnapping.
Defendant testified at trial that he was unfamiliar with the Slidell area, and had been seeking a club called Diamonds & Pearls. He maintained that he saw the victim sitting on the side of Ponchartrain Blvd. with her hands cupped over her face. He stated that he only stopped to help her. When he asked her what was wrong, he noticed that she had been beaten. According to defendant, she then jumped up and started swinging at him. He stated he could not remember whether or not the victim was partially nude when he approached her. Defendant testified that someone else came up and defendant "took off." He stated that he did not "want to be put in a situation where [he] was accused of anything. So that's why [he] got scared and ran." He further claimed that for this same reason, he did not stop when the police officer tried to stop him.

Admission of Photographs
By assignment of error number twelve (defense brief number eight), defendant argues that the trial court erred in allowing photographs of the victim to be admitted into evidence over his objections. Specifically, defendant maintains in his original brief that the prejudicial value of state exhibit number six, which shows the "bloody, swollen face" of the victim, outweighs the possible probative value thereof. Defendant does not cite any authority for this proposition or present any argument beyond this bare assertion.
LSA-C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
LSA-C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading *1011 the jury, or by considerations of undue delay, or waste of time.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible, provided their probative value outweighs any prejudicial effect. State v. Glynn, 94-0332, p. 9 (La.App. 1st Cir. 4/7/95); 653 So.2d 1288, 1298, writ denied, 95-1153 (La.10/6/95); 661 So.2d 464. The trial court's admission of allegedly gruesome photographs will be overturned on appeal only if the prejudicial effect of the photographs clearly outweighs their probative value. No error will be found unless the photographic evidence is so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543, 559 (La.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). In the instant case, the one photograph referred to in brief by defendant depicted the nature and extent of injuries the victim received during the commission of these crimes. The photograph was certainly relevant, and its probative value outweighed any prejudicial effect. Thus, this assignment of error is without merit.
In a related argument, defendant contends in assignment of error number fifteen (defense brief number eleven), that the trial court erred in allowing photographs of the victim to be shown to the jury upon the jury's request during deliberations. Defendant acknowledges that LSA-C.Cr.P. art. 793 and the jurisprudence provide authority for photographs to be provided to the jury upon request. However, the defense renews its argument that state exhibit number six was inflammatory and prejudicial, again stating that the prejudicial effect of this photograph "greatly outweighed any possible probative value," and thus, should not have been submitted to the jury. As stated above, we find no merit to defendant's argument. Moreover, there was no error in allowing the jury to view the photograph during deliberations. Accordingly, this assignment of error is likewise without merit.

Admission of Victim's Testimony on Intent to Rape
In assignment of error number thirteen (defense brief number nine), defendant argues that it was reversible error for the trial court to allow the victim to testify at trial regarding defendant's intent at the time of the alleged incident. Defendant argues that this testimony is speculative. Defendant again does not cite any authority for this proposition or present any argument beyond this bare assertion.
During the presentation of the state's case, the victim testified that defendant had ordered her to take off her pants. Thereafter, when the victim failed to comply quickly enough, defendant forcibly removed the victim's pants and panties himself. After this occurred, defendant started dragging the victim to a dark area of the parking lot. Following this testimony by the victim, her testimony continued with the following colloquy:
Q. What did you think he wanted to do?
A. He was going to, you know.
BY MR. McNARY [Defense Counsel]:
I object, Your Honor. I don't think that she can possibly testify as to what he wanted to do. If he said something, she can testify to that. If he did something, certainly, she's been testifying as to that. But as to what he wanted to do, unless he expressed that in some manner, I think that's improper speculation. It's an attempt by the State to supply intent by pure speculation.
BY MR. GARDNER:
State of mind.
BY THE COURT:
I will overrule the objection. Go ahead, sir.
EXAMINATION BY MR. GARDNER:
Q. What did you think he was going to do to you?
A. I didn't think he wanted my purse, because I thought that he wanted to rape me.
LSA-C.E. art. 701 allows opinion testimony by lay witnesses in the form of opinions or inferences when they are rationally based on the perception of the witness and helpful to a *1012 clear understanding of the witness' testimony or the determination of a fact in issue.
In the instant case, it was not error for the trial court to allow the victim to testify, based on her perception, as to the intent of her attacker, including the basis for her belief that he intended to rape her. This assignment of error has no merit.

Insufficient Evidence
In his first assignment of error, defendant argues that the evidence introduced at trial was not legally sufficient to support either his conviction on attempted forcible rape or second degree kidnapping. Defendant argues that there is absolutely no evidence that anal or vaginal intercourse was attempted. Further, defendant argues that there was no proof that the victim was prevented from resisting by force or threats of force and that she was able to flee after a brief struggle. On the charge of second degree kidnapping defendant argues that the state failed to prove that the victim was seized and carried from one place to another.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C. Cr. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
LSA-R.S. 14:42.1(A), which defines forcible rape, provided at the time of the commission of these offenses:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
LSA-R.S. 14:27(A), which defines an attempt, provides:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
To prove the crime of attempted forcible rape, the state is required to establish beyond a reasonable doubt that the defendant actively desired to commit rape by preventing the victim from resisting the act by force or threats of physical violence where the victim may reasonably believe that such resistance would not prevent the rape. Where the offender has the requisite intent to commit a forcible rape and does an act in furtherance of his goal, he has committed the offense of attempted forcible rape even if his victim successfully repels the threat or force. State v. Stelly, 93-1090, pp. 10-11 (La.App. 1st Cir. 4/8/94); 635 So.2d 725, 730-731, writ denied, 94-1211 (La.9/23/94); 642 So.2d 1309.
In the instant case, the victim was brutally beaten by her assailant and threatened with her life. Thus, the statutory requirement of force was met. The only other element that need be proven in this case is that the perpetrator had the specific intent to commit rape, i.e., anal or vaginal intercourse which is committed without the lawful consent of the victim.
Intent, absent an admission of such by a defendant, must necessarily be proven by inferences from surrounding facts and circumstances. State v. Hicks, 554 So.2d 1298, 1302 (La.App. 1st Cir.1989), writs denied, 559 So.2d 1374 (La.1990), 604 So.2d 1297 (La.1992). In the instant case, defendant made no such admission. Thus, it was necessary that the state prove this essential element of the crime by circumstantial evidence.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional *1013 sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
In the instant case, the victim was brutally attacked in the middle of the night at the side of a road. Although the victim was carrying a purse, she was not robbed, but instead was ordered to remove her pants. When she failed to comply, the defendant forcibly removed her pants and panties. He then proceeded to drag the victim to a darker area containing bushes away from the roadside and behind a building. Under these circumstances, a rational juror could, and in this case did, find the defendant guilty beyond a reasonable doubt. Thus, the evidence was sufficient to convict defendant of attempted forcible rape.
LSA-R.S. 14:44.1 provided at the time of the commission of these offenses:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
* * * * * *
(3) Physically injured or sexually abused;
* * * * * *
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another ...

* * * * * *
The provisions of this statute apply when any one occurrence mentioned in Subsection (B) combines with any one occurrence enumerated in Subsection (A). The statute does not require that the distance traveled during the forcible seizure be any particular length. State v. Arbuthnot, 625 So.2d 1377, 1383-1384 (La.App. 1st Cir.1993).
Defendant maintains in his supplemental brief that the state was proceeding under LSA-R.S. 14:44.1(A)(3) and (B)(1). He argues that the evidence at trial established that the victim was moved twenty feet at most; thus, he argues, the state failed to prove that a kidnapping had occurred under LSA-R.S. 14:44.1(B)(1).
As noted previously, there was ample evidence to prove the physical injury element under (A)(3). Thus, the only question presented for review is whether or not the victim was forcibly seized and carried from one place to another. The state presented the testimony of the victim that she was seized at the side of the road and dragged some distance toward a darkened area in the bank parking lot.
Dr. Wheelis, the emergency room physician who treated the victim on the night in question, testified that the victim had a dislocated shoulder, lacerations to her face and multiple abrasions on her body. She required three stitches over her left eye and one on her lower lip area. The victim did not appear drugged or intoxicated. He stated that the abrasions on the victim's lower extremities were consistent with being dragged across a cement surface, asphalt surface or even the ground itself.
We have no difficulty in finding that the victim in this case was forcibly seized and carried from one place to another. Accordingly, the evidence was sufficient to prove second degree kidnapping.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Gordon, 582 So.2d 285, 292 (La.App. 1st Cir.1991). In returning these guilty verdicts, the jury obviously believed the testimony presented by the state and rejected the defendant's version of these events. The credibility of the witnesses' testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Viewing all the evidence in the light most favorable to the state, any rational trier of fact could have found that the state proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant committed the crimes *1014 of attempted forcible rape and second degree kidnapping.
This assignment of error lacks merit.

Denial of Motion for New Trial
In his second assignment of error, defendant maintains that the trial court erred when it failed to grant him a new trial, because the jury's verdict was contrary to law and the evidence presented at trial. He adopts the foregoing argument in the previous assignment of error in support of this claim.
Under LSA-C.Cr.P. art. 851, in ruling on a motion for new trial, the trial court can only consider the weight of the evidence. In ruling on a motion for new trial, the court makes a factual review of the evidence as a thirteenth juror. State v. Gaines, 633 So.2d 293, 298 (La.App. 1st Cir.1993), writ denied, 93-3164 (La.3/11/94); 634 So.2d 839.
An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. State v. Azema, 633 So.2d 723, 727 (La.App. 1st Cir.1993), writ denied, 94-0141 (La.4/29/94); 637 So.2d 460.
In the instant case, there is no indication that the trial court abused its sound discretion when it denied defendant's motion for new trial. Thus, we find no merit in this assignment of error.

Denial of Motion in Arrest of Judgment
In his third assignment of error, defendant argues that the trial court erred when it denied his motion in arrest of judgment, which alleged that defendant was not charged under a valid statute because LSA-R.S. 14:44.1(B)(1) is unconstitutionally vague. It is unclear from defendant's argument whether he is attacking the statute as being unconstitutional on its face or as applied to this case.
A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct to it. In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. State v. Brown, 94-1290, p. 5 (La.1/17/95); 648 So.2d 872, 875.
The challenged portion of LSA-R.S. 14:44.1 reads as follows:
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another ...

* * * * * *
Defendant maintains that the evidence at trial established that the victim was moved twenty feet at most, that no structure or vehicles were entered and that no doors were opened or closed. Defendant argues that the extreme vagueness of the statute allowed the "absurd result" of defendant's conviction. Defendant argues that a more precise definition of "place" is necessary to prevent confusion.
We find no ambiguity in the second degree kidnapping statute. The language of the statute is clear and readily understandable, gives notice of what conduct is proscribed and provides adequate standards for determining the guilt or innocence of the accused. Any reasonable person can understand what is meant by forcibly seizing and carrying a person from one place to another. There is no requirement in the statute, nor should there be, that a structure be entered or that there be movement within a structure from one room to another to constitute a crime under this statute. The definition suggested by the defense would result in the absurd situation where a person could be kidnapped outdoors and taken from one outdoor location to another, and the perpetrator could not be punished for the kidnapping.
In the instant case, the jury correctly determined that defendant forcibly seized the victim at the roadside, and carried or dragged her from that location to another location in the darkened rear portion of the bank parking lot. Under the circumstances of this case, we do not find the statute to be unconstitutionally vague. Thus, this assignment of error lacks merit.

*1015 Excessive Sentence
In assignments of error numbers four and five, defendant contends that the trial court erred by imposing excessive sentences and by failing to grant defendant's motion to reconsider sentence. Defendant raised the issue of double jeopardy for the first time in his motion to reconsider sentence. This issue is dealt with as a separate assignment of error below.
Defendant was convicted of attempted forcible rape and second degree kidnapping. The trial court sentenced defendant to serve a term of five years at hard labor on count one and twelve years at hard labor on count two to run concurrently to each other and with credit for time served. Defendant's exposure on count one was between two and one-half to twenty years at hard labor, see LSA-R.S. 14:42.1(B) and 14:27(D)(3); his exposure on count two was between five and forty years at hard labor, see LSA-R.S. 14:44.1(C).
In this case, the trial court ordered and received a presentence investigation report (PSI). The PSI included a sentencing guidelines report reflecting that, under the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission, the applicable sentencing range of incarceration for a first felony offender who falls into grid cell 2-G and who commits the crime of attempted forcible rape is eighteen to thirty months. Further, the applicable sentencing range for a first felony offender who falls into grid cell 1-G and who commits the crime of second degree kidnapping is sixty to ninety months.
Defense counsel argues that the sentences imposed were excessive in that defendant should have been considered eligible for the statutory minimums, instead of over twice the minimum which he received on each count. Likewise, counsel argues that defendant should not have received three times the period recommended without parole, probation or suspension of sentence.
Under the law in effect at the time of defendant's sentencing, a trial court was required to "consider" the Felony Sentencing Guidelines promulgated by the Louisiana Sentencing Commission in imposing sentence and to state for the record the considerations taken into account and the factual basis for the sentences imposed. LSA-C.Cr.P. art. 894.1(A) & (C) (prior to amendment and reenactment by 1995 La. Acts No. 942, § 1). Provided the court complied with these requirements of article 894.1, it had "complete discretion to reject the Guidelines and impose any sentence which [was] not constitutionally excessive, but [was] within the statutory sentencing range for the crime of which a defendant [had] been convicted...." State v. Smith, 93-0402, p. 3 (La.7/5/94); 639 So.2d 237, 240 (on rehearing). The Supreme Court described our duty as a reviewing court as follows:
[W]here the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
State v. Smith, 93-0402 at p. 3; 639 So.2d at 240.
In imposing the instant sentence, the trial court gave the following reasons:
I find as both counsel have indicated, that the offenses falls [sic] within 1G and 2G of the guidelines. The Court has also considered the type of offense this was. It was a brutal attack. This victim will be a victim of this crime for the rest of her life.
Therefore, I hereby sentence Mr. Steward on the second-degree kidnapping charge to twelve years at hard labor, six years of which will be without parole, probation or suspension of sentence.
On the second [charge of] attempted forcible rape, [the] Court sentences him to spend five years, one year of which will be without benefit of parole, probation or suspension of sentence. These sentences are to run concurrently with each other, as this was one transaction or occurrence of the offenses.
I find that I'm going outside the sentencing guidelines because of the brutality exhibited in the attack towards the victim.

*1016 One element of the crime of kidnapping is physical harm, and the physical harm which was portrayed amounted to several thousand dollars in bills. She was struck repeatedly in the face, there was a separation of the shoulder, also threats to the life of the victim in this case.
From the foregoing it is clear that the trial court considered the guidelines and decided that a deviation was warranted. Thus, our review is limited to a review of the sentence for constitutional excessiveness. State v. Smith, 93-0402 at p. 3; 639 So.2d at 240.
Based upon the entirety of the record, and particularly the sentencing reasons articulated by the trial court, we find no error in the trial court's determination that these sentences were appropriate for defendant under the facts of this case. The five year and twelve year concurrent sentences in this case are not shocking to our sense of justice; accordingly, these assignments are meritless.

Double Jeopardy
By assignments of error numbers four(a) and nine (defense brief numbers five and six), defendant argues that there is error patent in that defendant was convicted for attempted forcible rape and second degree kidnapping on the same bill of information and at the same trial in violation of his constitutional protection against double jeopardy. Defendant claims that the elements of the two offenses are nearly identical and were part of a continuous offense.
Both the United States and Louisiana Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. amend. V; La. Const. art. I, § 15. In determining whether two prescribed offenses constitute the "same offense" for double jeopardy purposes, Louisiana courts have applied two different standards, the "same evidence" test and the Blockburger or "same elements" test. City of Baton Rouge v. Ross, 94-0695, p. 17 (La.4/28/95); 654 So.2d 1311, 1322. In State v. Miller, 571 So.2d 603, 606 (La.1990), the Louisiana Supreme Court described the two tests as follows:
[Under] the test in Blockburger v. United States, [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ], ... [t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied is whether each provision requires proof of an additional fact which the other does not...
* * * * * *
The "same evidence" test depends upon the proof required to convict, not the evidence actually introduced at trial. Thus, if the evidence necessary to support the second indictment would have been sufficient to support the former indictment, double jeopardy prohibits the second prosecution.
(Quoting State v. Knowles, 392 So.2d 651, 654 (La.1980)).
In State v. Steele, 387 So.2d 1175, 1177 (La.1980), the "same evidence" test was described as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial. (citation omitted).
However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. State v. Nichols, 337 So.2d 1074, 1078 (La.1976).
In the instant case, defendant was convicted of attempted forcible rape, a violation of LSA-R.S. 14:27 and 14:42.1, and second degree kidnapping, a violation of LSA-R.S. 14:44.1. At the time of the commission of these offenses, LSA-R.S. 14:42.1(A) provided:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances *1017 where the victim reasonably believes that such resistance would not prevent the rape.
At the time of the commission of these offenses, LSA-R.S. 14:44.1 provided:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
* * * * * *
(3) Physically injured or sexually abused;
* * * * * *
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another ...

* * * * * *
In applying either the Blockburger "same elements" test or the "same evidence" test to the facts of this case, no violation of double jeopardy exists. Under the Blockburger "same elements" test, the crime of attempted forcible rape requires proof of an additional fact, i.e., an intent to commit forcible anal or vaginal intercourse, which second degree kidnapping does not. Likewise, second degree kidnapping requires proof of an additional fact, i.e., the forcible seizing and carrying of a person from one place to another, which attempted forcible rape does not.
Under the "same evidence" test, the attempted forcible rape occurred when defendant repeatedly beat the victim, when he ordered her to remove her pants and when he removed her pants and panties himself. The second degree kidnapping occurred when defendant physically injured the victim by repeatedly striking her and when he forcibly seized her and carried her from the roadside to the rear of the bank parking lot. Two separate crimes occurred, which included separate elements and required separate proof. Therefore, the "same evidence" was not used to convict defendant in this case.
Defendant relies heavily on State v. Burton, 94-486 (La.App. 3rd Cir. 11/9/94); 649 So.2d 694. However, Burton is inapposite. Defendant maintains in his supplemental brief that the evidence used to convict him under LSA-R.S. 14:44.1(A)(3) was the same evidence used to prove the attempted rape. However, the facts in Burton reveal that in order to obtain a conviction for second degree kidnapping, the state relied on evidence that the victim was carried into a bedroom where she was sexually abused; thereafter, the same evidence of sexual abuse was utilized to convict Burton of attempted forcible rape. Therefore, the Burton court was faced with a situation where the evidence necessary to convict on one count was also necessary to convict on the second count, a clear violation of double jeopardy. On the other hand, in this case the evidence necessary to convict defendant of two separate crimes is not the same. The State does not rely on the evidence supporting the attempted rape to prove the second degree kidnapping. Furthermore, in the instant case there is the additional factor of physical injury that was not present in Burton. Therefore, the State could prove its case of second degree kidnapping by proving physical injury under (A)(3), and did not have to rely on sexual abuse as in Burton. Thus, no double jeopardy violation occurred.
These assignments of error are without merit.

Definition of "Place" during Voir Dire

In assignment of error number ten (defense brief number seven), defendant maintains that he should have been allowed to define the "vague and ambiguous" term "place" using a dictionary, during the voir dire examination. Defendant argues that if the jury had a reasonable definition of the word, he would not have been convicted.
The merits of this argument have been previously addressed under assignment of error number three. Since the term was not found to be ambiguous, it was not necessary to define the term during voir dire. Thus, this assignment has no merit.

Denial of Motion for Mistrial
In assignment of error number fourteen (defense brief number ten), defendant maintains that it was error for the trial court to deny a defense motion for a mistrial following a question by the prosecutor directed to defendant on cross-examination. Again, defendant does not cite any authority for this *1018 proposition or present any argument beyond a bare assertion that it was error.
This assignment of error is based on the following colloquy between the prosecutor and defendant:
Q. Now, they brought you eventually back to the Time Saver?
A. Yes.
Q. And at that time, you saw the girl that you had attempted to help?
A. Yes.
Q. And what did she do?
A. When they brought me in, the police officer that brought me to her, to them, he brought me to the door and I don't know which one, one of the officers said, and I do remember this, is this the one, and she said yes. And that's when he took me out. He didn't even wait. He took me out.
Q. What did you do at this point?
A. He took me out. He put me in the car.
Q. What did you say at that point?
BY MR. BRESLIN [Defense Counsel]:
Objection, Your Honor. May we approach the bench?
(AT THIS TIME, THE FOLLOWING DISCUSSION WAS HELD AT THE BENCH:)
BY MR. BRESLIN:
Your Honor, Mr. Gardner has commented on his exercise of his constitutional right to remain silent. We didn't object the first couple of times. I'm going to object now because I didn't ask for a mistrial. The officer already testified numerous times that they arrested him and gave him his Miranda rights which includes the prejudicial remarks that are implied to the audience that he has something that he has to say. And I would like a recess to discuss whether or not we will move for a mistrial.
Defense counsel continued:
We are going to move for a mistrial on those grounds. We ask if the Court denies it, we would object to that, but would ask if you would admonish the jury that they should ignore any innuendoes that might arise from that because this person had been given Miranda rights and he had an absolute right to remain silent from the time of the arrest.
Following further argument, the trial court stated:
Well, I'm going to deny the mistrial, but I will admonish the jury to not infer anything from the questions.
BY MR. McNARY:
Please note our objection to the denial of the mistrial.

(IN OPEN COURT:)
BY THE COURT:
I sustain the defense objection to the question asked and also admonish the jury to disregard the question and not draw any conclusions or inferences from the question that was previously asked.
LSA-C.Cr.P. art. 770(3) provides for a mandatory mistrial when a remark or comment is made by the judge, the district attorney, or a court official during the trial within the hearing of the jury and such remark or comment refers directly or indirectly to the failure of the defendant to testify in his own defense. This article is inapplicable in the instant case.
LSA-C.Cr.P. art. 771 provides for a discretionary mistrial, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770 ...
* * * * * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
*1019 The United States Supreme Court has held that, because an accused's post-arrest silence is "insolubly ambiguous" and a jury is apt to draw inappropriate inferences from the fact that a defendant chose to remain silent, "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Doyle v. Ohio, 426 U.S. 610, 617 and 619, 96 S.Ct. 2240, 2244 and 2245, 49 L.Ed.2d 91 (1976). The Louisiana Supreme Court has indicated that, under the authority of article 771 of the Code of Criminal Procedure, where the prosecutor or a witness makes a reference to a defendant's postarrest silence, the trial court is required, upon the request of the defendant or the state, to promptly admonish the jury. In such cases where the court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, upon motion of the defendant, the court may grant a mistrial. See State v. Kersey, 406 So.2d 555, 560 (La. 1981).
In State v. Stelly, 93-1090 (La.App. 1st Cir. 4/8/94); 635 So.2d 725, writ denied, 94-1211 (La.9/23/94); 642 So.2d 1309, this court discussed a similar occurrence. In Stelly, a prosecutor asked a police officer whether or not the defendant made any statements after his arrest. The trial court denied the motion for mistrial and refused to admonish the jury. This court found that the state did not appear to ask the question of defendant's post-arrest silence for the purpose of calling the jury's attention to it or of having the jury draw inappropriate inferences. Further, the prosecutor did not attempt to exploit the defendant's failure to speak after his arrest, and he did not pursue that line of questioning any further. Thus, this court ruled that under the circumstances, a mistrial was not warranted and the failure to admonish the jury was harmless error. State v. Stelly, 93-1090 at p. 7; 635 So.2d at 728-729.
In the instant case, the trial court took adequate steps to insure that defendant received a fair trial. Following the objection, the prosecutor did not pursue that line of questioning, nor did he draw any further attention to the matter. Furthermore, the admonition given by the trial court was sufficient. Considering all of the above, we find no indication that the defendant was unable to obtain a fair trial because of the prosecutor's question. Accordingly, we find no abuse of discretion in the trial court's ruling denying defendant's motion for a mistrial.
This assignment of error is meritless.

Patent Error
In reviewing the record for patent error, pursuant to LSA-C.Cr.P. art. 920(2), we have discovered that the trial court did not wait the required twenty-four hours after denial of defendant's motion for new trial, motion in arrest of judgment and motion for post verdict judgment of acquittal before imposing sentence. See LSA-C.Cr.P. art. 873. However, in response to the trial court's inquiry as to whether or not the parties were ready for sentencing, one of defendant's counsel stated that prior to the passing of sentence, it should be noted that "we would like to call one witness for a brief sentencing hearing." In the instant case, by announcing his readiness for a sentencing hearing, defendant implicitly waived the waiting period. See State v. Lindsey, 583 So.2d 1200, 1206 (La.App. 1st Cir.1991), writ denied, 590 So.2d 588 (La.1992). Moreover, defendant has not cited any prejudice resulting from the court's failure to delay sentencing, nor have we found any indication that he was prejudiced. Thus, any error which occurred is not reversible. See State v. Claxton, 603 So.2d 247, 250 (La.App. 1st Cir.1992).

CONVICTIONS AND SENTENCES AFFIRMED.
FITZSIMMONS, J., dissents in part with reasons.
FITZSIMMONS, Judge, dissenting in part.
I dissent from that portion of the judgment that affirms the conviction of attempted forcible rape. The compulsory standard of proof requires that the evidence, viewed in the light most favorable to the prosecution, must be sufficient to justify any rational juror in finding the essential elements of a crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, *1020 61 L.Ed.2d 560, 573 (1979). The Louisiana Supreme Court has, furthermore, specifically addressed the requisite burden of proof of attempted rape; to wit:
To convict the defendant of attempted aggravated rape, the state had to prove that he specifically intended to engage in an act of anal or vaginal sexual intercourse without his victim's lawful consent. La. R.S. 14:27; La. R.S. 14:42. Such proof is indispensable because specific intent to accomplish the offense is the sine qua non of the criminal offense of attempt, State v. Parish, 405 So.2d 1080 (La.1981) ... State v. Trackling, 609 So.2d 206, 207 (La.1992).
The evidence in the matter before us, presented in the light most favorable to the prosecution, did not prove beyond a reasonable doubt, to a rational person, that the attacker specifically intended to perpetrate an act of anal or vaginal intercourse, as is required pursuant to La. R.S. 14:27 and 14:42.1(A). State v. Trackling, 609 So.2d at 207. There was no form of communication by the defendant, either physically or verbally, that he was going to rape the victim. In point of fact, it is unknown if the defendant intended to commit sexual battery, molestation, aggravated sexual battery, or any other sexual act. The fact that the assailant ordered the victim to take off her pants, absent any evidence supporting specific intent to commit one of the two particular physical acts that constitute rape, is not sufficient to demonstrate that the defendant had the fixed purpose of engaging in anal or oral intercourse. Even assuming, arguendo, that a sexual act of some sort was intended, there is no evidence that either of the particular acts of anal or sexual intercourse was contemplated. Proof of specific intent to rape cannot rest on the fear and anticipation of the victim alone. It is respectfully submitted that the attempted aggravated rape conviction should not stand.