STATE OF LOUISIANA
v.
VENESSA LYNN FEDELE.
No. 2007 KA 1424.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
HON. WALTER P. REED, District Attorney, SHEA PENTON, Assistant District Attorney, and KATHRYN LANDRY, Special Appeals Counsel, Attorneys for State of Louisiana,
JANE L. BEEBE, ATTORNEY FOR DEFENDANT-APPELLANT VENESSA FEDELE.
Before CARTER, C.J., PETTIGREW, and WELCH, D.
PETTIGREW, J.
The defendant, Venessa Fedele, was charged by bill of information with driving while intoxicated, fourth offense, a violation of La. R.S. 14:98(E). She pled not guilty. Following a trial by jury, the defendant was found guilty as charged. She was fined $5,000.00 and sentenced to imprisonment for fifteen years at hard labor. The trial court suspended all but sixty days of the imprisonment sentence and ordered that the unsuspended portion of the sentence be served in the parish jail.[1] The defendant now appeals, urging a single assignment of error challenging the sufficiency of the State's evidence.

FACTS
On October 30, 2004, Washington Parish Sheriffs Deputy Richard Edwards was dispatched to the intersection of Ward Line Road and Highway 1074 in Washington Parish to investigate a single-vehicle accident wherein the driver collided with a tree. Upon arriving on the scene, at approximately 1:52 a.m., Deputy Edwards observed the wrecked vehicle, but the driver was not in the area. Later, upon receiving information indicating that the driver of the vehicle was at a nearby hospital, Deputy Edwards reported to the hospital to continue his investigation. He arrived at the hospital at approximately 3:15 a.m. and made contact with the defendant. The defendant confirmed that she was, in fact, the driver of the wrecked vehicle in question.
After briefly conversing with the defendant, observing her physical condition and behavioral manifestations, and performing a horizontal-gaze nystagmus (HGN) sobriety test, Deputy Edwards concluded that the defendant was impaired and had been impaired at the time of the collision.
The defendant had three prior DWI convictions.

SUFFICIENCY OF THE EVIDENCE
In her sole assignment of error, the defendant contends the trial court erred in denying her motion for a new trial, which was based upon La. Code Crim. P. art. 851, subsections (1) and (5). The defendant complains that in denying the motion for a new trial, the trial court failed to apply the proper standard of weighing the evidence as a thirteenth juror.
Article 851 states, in pertinent part, as follows:
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
....
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
Under Article 851, in ruling on a motion for new trial, the trial court can only consider the weight of the evidence, not its sufficiency, and sits as a thirteenth juror. State v. Morris, 96-1008, pp. 10-11 (La. App. 1 Cir. 3/27/97), 691 So.2d 792, 799, writ denied, 97-1077 (La. 10/13/97), 703 So.2d 609; see also State v. Steward, 95-1693, p. 12 (La. App. 1 Cir. 9/27/96), 681 So.2d 1007, 1014. An appellate court, on the other hand, is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases, that determination resting solely within the discretion of the trier-of-fact. Steward, 95-1693 at 12, 681 So.2d at 1014. Appellate courts may review the grant or denial of a motion for new trial only for errors of law. See La. Code Crim. P. art. 858.
In the instant case, the defendant has made no showing that an error of law was committed in this case. Accordingly, the denial of the defendant's motion for new trial based either upon La. Code Crim. P. art. 851(1) or (5) is not subject to review on appeal. See State v. Hampton, 98-0331, pp. 12-13 (La. 4/23/99), 750 So.2d 867, 879-880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Snyder, 98-1078, p. 37 n.21 & 22 (La. 4/14/99), 750 So.2d 832, 859 n.21 & 22.
Nevertheless, since much of the defendant's argument in brief focuses on her claim that the evidence was insufficient to support the conviction, and the defendant prays for a reversal of her conviction rather than a new trial, we will consider the sufficiency argument.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); State v. Mussali, 523 So.2d 1305, 1308-1309 (La. 1988). When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. See State v. Wright, 98-0601, p. 2 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & XXXX-XXXX (La. 11/17/00), 773 So.2d 732. This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In order to convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle, and that he was under the influence of alcohol or drugs. La. R.S. 14:98(A); State v. Graves, 95-0578, p. 7 (La. App. 1 Cir. 5/10/96), 675 So.2d 1141, 1145. In the instant case, there is no dispute that the defendant was operating a vehicle, and the defendant stipulated that she had been convicted of the three predicate DWI offenses used by the State to enhance the instant DWI to a fourth offense. Thus, we are concerned only with whether the State proved defendant was under the influence of a controlled dangerous substance at the time she was operating the vehicle.
Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. Anderson, XXXX-XXXX, p. 10 (La. App. 1 Cir. 3/28/01), 784 So.2d 666, 676, writ denied, XXXX-XXXX (La. 4/19/02), 813 So.2d 421. Furthermore, an officer's subjective opinion that a subject failed a field-sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. State v. Smith, 93-1490, p. 6 (La. App. 1 Cir. 6/24/94), 638 So.2d 1212, 1215.
In Smith, this court found the evidence sufficient to support a DWI conviction where the trooper testified that the defendant smelled of alcohol, his speech was slurred and deliberate, his eyes were bloodshot, he was staggering, he admitted that he had consumed four beers, he was uncooperative and aggressive after being arrested, and he refused to take the breath test. Smith, 93-1490 at 3-5, 638 So.2d at 1214. Similarly, a DWI conviction was found to be supported by the evidence when a trooper observed the defendant's erratic driving, physical appearance, slurred speech, and behavior. The defendant failed the field-sobriety tests. He attempted to hide a vodka bottle under the back seat of his truck, and he admitted he had drunk alcohol. State v. Worachek, 98-2556, p. 9 (La. App. 1 Cir. 11/5/99), 743 So.2d 1269, 1274.
By contrast, in State v. St. Amant, 504 So.2d 1094, 1098 (La. App. 5 Cir. 1987), an arresting officer's statement that the defendant smelled of alcohol, was unsteady on her feet, and seemed confused was insufficient to sustain the State's burden where the defendant did not appear intoxicated on a video recording of the field-sobriety test. Similarly, in State v. Sampia, 96-1460 (La. App. 1 Cir. 6/20/97), 696 So.2d 618, the defendant's conviction was not supported despite the arresting officer's observations that the defendant, who was involved in an accident, smelled of alcohol, had slurred speech, and swayed slightly. The officer did not observe the defendant until almost four hours after the accident, and the defendant's speech and swaying could have been attributable to factors other than intoxication, such as her emotional state. Sampia, 96-1460 at 5, 696 So.2d at 621.
In the instant case, the defendant argues that although Deputy Edwards testified that she appeared to be intoxicated based upon the HGN test administered "hours" after the very serious accident (wherein she claims she sustained a head injury) and after she had taken prescribed methadone, it was not rational for the trial court to find this evidence sufficient to establish that she was impaired while operating her vehicle. The defendant further asserts that during the investigation, she told Deputy Edwards that she had taken her prescribed pain medication after the accident. Thus, she claims the collision in question was a direct result of the dangerous condition of the intersection and the dark, foggy weather conditions, not any drug-related impairment. Specifically noting that the State failed to present any evidence of the amount of methadone found in her system, the defendant argues that it was unreasonable for the trial court to have rejected her hypothesis of innocence. In response, the State submits that the uncontradicted evidence, including the laboratory analysis, the results of the HGN sobriety test, and the observations by Deputy Edwards, clearly proves that the defendant operated her vehicle while under the influence of methadone, a controlled dangerous substance.
At the trial, the State's only witness was Deputy Edwards. Deputy Edwards testified that when he spoke with the defendant at the hospital, she appeared disoriented and unsure of her surroundings. Her speech was also a "bit slurred." Deputy Edwards conducted a HGN sobriety test wherein the defendant was instructed to follow an object with her eyes. Deputy Edwards watched for sudden involuntary jerking of the eye while following the object. Deputy Edwards testified that during the test, he observed that the defendant's eyes were "glazed over" and there was "a slight tick" past 45 degrees, which indicated the possibility of the presence of either alcohol or a controlled dangerous substance. Because he did not detect the odor of alcohol emitting from the defendant's person, Deputy Edwards suspected impairment by a controlled dangerous substance. Deputy Edwards further explained that, consistent with his suspicions, he recalled observing an empty methadone prescription bottle with the defendant's name on it while conducting an inventory of the vehicle at the scene of the accident. Consequently, Deputy Edwards asked the defendant if she had taken any medication that day. The defendant responded affirmatively and indicated that she had taken two tablets of methadone "this morning." Deputy Edwards testified that the defendant denied taking any medications and/or consuming any alcohol after the collision. Based upon this information and the observed behavioral manifestations, Deputy Edwards concluded that the defendant was impaired.
At the trial, the defendant testified and denied being impaired on the night in question. She presented the hypothesis of innocence that she ran off of the road and wrecked her vehicle due to the dark, foggy weather conditions on the night in question and the absence of warning signs at the intersection. The defendant further testified that when traveling on the road in question at night, she often relied on a bump in the road (old covered railroad tracks) as an indication as to where the intersection and/or stop was actually located. She claimed she was not aware that the "bump" in the road had recently been fixed.
As further support for her hypothesis of innocence, the defense presented testimony from John Gartman, a neighbor and friend of the defendant. Gartman testified that he too had been involved in a similar incident at the same intersection. He explained that he inadvertently drove out into the intersection on a foggy morning. Gartman further testified that he was aware of another individual who filed suit against the State after being involved in an accident at this intersection, subsequent to the defendant's collision. According to Gartman, several reflective warning signs were installed at the intersection after the lawsuit was filed. Gartman opined that the warning signs needed to have been at the intersection all along, but they were not. In connection with Gartman's testimony, the defense introduced a photograph of the intersection with the warning signs.
The defense and the State stipulated that a blood sample provided by the defendant at the hospital, when tested, revealed the presence of methadone and methadone metabolites and the absence of any alcohol. The stipulation further provided that metabolites are "[c]ompounds present in the body that indicate the body's processing of the drug of which they are metabolites." The parties also stipulated to the existence of the defendant's three prior DWI convictions.
In the instant case, the evidence of the defendant's impairment consisted of the single-vehicle accident; Deputy Edwards's personal observations of the defendant's physical condition, speech, and behavioral manifestations; the defendant's performance on the HGN sobriety test; the defendant's statement that she ingested methadone that morning; and the blood test reflecting the presence of methadone and methadone metabolites in the defendant's system.
In finding the defendant guilty as charged, the jury obviously accepted the testimony of Deputy Edwards and rejected the defendant's hypothesis of innocence. We find this rejection reasonable in light of the facts and circumstances in this case. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 98-1407, p. 6 (La. App. 1 Cir. 4/1/99), 734 So.2d 800, 805, writ denied, 99-1386 (La. 10/1/99), 748 So.2d 439. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984).
After a careful review of the record and viewing all of the evidence in the light most favorable to the State, we find that any rational trier of fact could have concluded beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that the defendant was under the influence of methadone at the time she operated the vehicle on the night in question and, therefore, was guilty of DWI, fourth offense. Insofar as the defendant claims she ingested methadone subsequent to the collision, we note that this claim is unsupported by the record. At the trial, when asked if she took any of her medication after the accident, the defendant indicated that she could not remember. Deputy Edwards, on the other hand, testified that the defendant specifically indicated to him that she did not. This assignment of error is without merit.

REVIEW FOR ERROR
In her brief, the defendant asks that this court examine the record for error under La. Code Crim. P. art. 920(2). This court routinely reviews the record for such error. Under Article 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 2005-2514, pp. 18-22 (La. App. 1 Or. 12/28/06), 952 So.2d 112, 123-125 (en banc) (petition for cert. filed at La. Supreme Court on 1/24/07, 2007-K-130).
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
WELCH, J., DISSENTING.
I believe that the evidence is legally insufficient to support defendant's DWI conviction and therefore, I respectfully dissent.
The evidence cited by the majority as demonstrating defendant's impairment at the time of the accident and thus supporting her conviction includes: (1) the single-vehicle accident; (2) Deputy Edwards' personal observations about defendant's physical condition, speech and behavioral manifestations; (3) the defendant's performance on the HGN sobriety test; (4) the defendant's admission that she took methadone that day; and (5) the blood test reflecting the presence of methadone in defendant's system.
It is undisputed that defendant ingested methadone pills which she had a prescription for, prior to the accident. It is also undisputed that defendant tested positive for the presence of methadone in her system some time after the accident. However, there was no scientific evidence offered by the State to show the level at which methadone impairs one's ability to drive or of the level of methadone in defendant's system at the time of the accident. In the absence of such evidence, the critical question is whether the State proved beyond a reasonable doubt that defendant was impaired at the time of the accident because of her ingestion of methadone. I conclude it did not.
The first piece of evidence relied on to support the conviction is the fact that defendant drove her vehicle off of the roadway. The record reflects that defendant drove through an unlit "T" intersection on a foggy evening. These driving conditions made it likely that the accident could have been attributable to factors other than impairment.
Moreover, Deputy Edwards' observations regarding defendant's physical condition, speech, and behavioral mannerisms could easily be attributable to the accident. The evidence showed that defendant sustained lacerations to her chin and a through-and-through lip laceration as a result of the accident, and walked over a mile to her home to call for assistance. Deputy Edwards acknowledged that there was a considerable amount of blood in defendant's vehicle at that accident site, and that she was covered in blood when he first saw her at the hospital. According to hospital records, defendant was alert, coherent, and aware of her environment. According to Deputy Edwards, defendant was disoriented and her speech was slurred. It is quite possible that defendant's poor physical appearance, her disorientation and difficulty speaking were caused by injuries she sustained in the accident rather than impairment from methadone use.
The strongest evidence supporting the conviction is Deputy Edwards' testimony that defendant failed the HGN sobriety test. However, the test was administered hours after the accident to a person who sustained facial injuries and head trauma. Moreover, there was no evidence demonstrating that defendant took methadone in excess of the dosages recommended by her physician, and there was no warning contraindicating driving a motor vehicle while taking the medication at prescribed dosages. Considering all of the circumstances of this case, I believe the State's evidence was insufficient to prove beyond a reasonable doubt that defendant operated a vehicle while intoxicated/impaired. A defendant should not be prosecuted for taking prescribed medication in dosages recommended by the physician when there is no warning contraindicating driving a motor vehicle. Therefore, I would reverse her conviction.
NOTES
[1] The trial court also placed the defendant on supervised probation for a period of five (5) years, to begin immediately upon release from jail and to be monitored by the Louisiana Office of Probation and Parole. The trial court also ordered the defendant to submit to inpatient substance abuse treatment, followed by outpatient treatment, home incarceration with electronic monitoring, and attendance in a driver improvement program.